IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| STELLAR J CORPORATION, a Texas corporation, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil No. 09-353-JE |
| SMITH & LOVELESS, INC., a Kansas corporation, | ) ) ) | FINDINGS AND RECOMMENDATION |
| Defendant. | ) ) | |
| _____ | ) ) | |
| CITY OF RANIER, for the use and benefit of SMITH & LOVELESS, INC., and SMITH & LOVELESS, INC., a Kansas corporation, | ) ) ) ) | |
| Counterclaimants, | ) ) | |
| v. | ) ) | |
| STELLAR J CORPORATION, a Texas corporation, and TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, an insurance company, | ) ) ) ) | |
| Counterdefendants. | ) ) | |
| _____ | ) | |

FINDINGS AND RECOMMENDATION - 1

Albert F. Schlotfeldt
Duggan, Schlotfeldt & Welch, PLLC
900 Washington Street, Suite 1020
P.O. Box 570
Vancouver, WA 98666-0570

  Attorney for Plaintiff Stellar J Corporation

Guy A. Randles
Sean C. Gay
Stoel Rives LLP
900 S.W. 5th Avenue, Suite 2600
Portland, OR 97204

Dan S. Sanders (admitted pro hac vice)
Monaco, Sanders Gotfredson, Racine & Barber, L.C.
1001 E. 101st Terrace, Suite 170
Kansas City, MO 64131

  Attorneys for Defendant Smith & Loveless, Inc.


JELDERKS, Magistrate Judge:

  Plaintiff Stellar J Corporation (Stellar J) brings this action against defendant Smith & Loveless, Inc. (Smith).  Smith asserts counterclaims, and asserts third-party claims against Travelers Casualty and Surety Company of America (Travelers).

  Defendant Smith moves for summary judgment on all of plaintiff Stellar J's claims. The motion should be granted in part and denied in part as set out below.


## **Background**

  This action arises from a contract between plaintiff Stellar J and defendant Smith for the purchase and installation of equipment for use in a wastewater treatment improvement project (the Project) in the City of Rainer, Oregon (the City).  Plaintiff Stellar J was the general contractor hired by the City.  Stellar J and defendant Smith entered into a sales and

FINDINGS AND RECOMMENDATION - 2

subcontract agreement under which Smith agreed to specially fabricate and install a new treatment unit, and to supply retrofit equipment that would be used in refurbishing the City's existing treatment plant.

On January 10, 2008, the City issued Stellar J a notice to proceed with construction. The notice allowed Stellar J until January 10, 2009 (365 days) to substantially complete the Project, and until March 9, 2009 (420 days) for final completion according to the terms of the Contract Documents.

During the course of the Project, the City issued Stellar J a series of Change Orders which extended the deadline for substantial completion to May 17, 2009, and extended the final completion date to July 11, 2009. With these extensions, the contract price to be paid to Stellar J for the Project was increased by $616,441.35, to $9,007,880.05. None of the Change Orders extending contract deadlines were caused by Smith's delay in delivering or installing equipment for the Project.

Based upon its assertion that Smith failed to provide services and materials within the time frame required, Stellar J terminated the parties' subcontract on February 24, 2009. Thereafter, Stellar J contracted with another supplier to obtain the equipment that Smith had agreed to provide.

In a letter to the City's consultant dated May 21, 2009, Tim Bauman, Stellar J's Project Manager, stated that the Project was substantially complete. Stellar J finished the start up of the retrofitted treatment unit by July 7, 2009, and began demobilizing from the job site the following day. Except for certain punch list items that were not related to defendant Smith, all remaining work was completed by mid-July, 2009. Because Stellar J's work was

FINDINGS AND RECOMMENDATION - 3

completed within the revised allowable Contract Period, as extended by the Change Orders

noted above, the City asserted no claims for liquidated damages against Stellar J.

Section 5.17 of the General Conditions of the Project Manual for the Project provides

that:

> It is agreed that the Contract Price includes the Contractor's office and
> field overhead, profit and related charges for the full Contract Time.  The
> Contractor may, at its option, complete the work in a shorter period than
> the Contract Time but the Contractor may not make a claim for extended
> overhead or other charges for: (1) delays that extended completion beyond
> the date planned by the Contractor but not beyond the Contract Time, and
> (2) delays contemplated by the Contractor and the Owner.  All float in the
> schedule shall first be for the benefit of the Owner, the Engineer, the Design
> Engineer and then for the benefit of the Contractor.  To the fullest extent
> permitted by law, the Contractor on behalf of itself and its subcontractors,
> waives any and all claims for damages attributable to delays, interference, or
> acceleration caused by the owner, the Engineer, the Design Engineer, and each
> of their officers, employees, agents and consultants, and the Contractor and its
> subcontractors shall be entitled to an extension of the Contract Time as their
> exclusive remedy.

Several provisions of the subcontract agreement between Stellar J and Smith are

relevant to the analysis of the pending motion.  Under Paragraph 2 of the subcontract

agreement, plaintiff Stellar J and defendant Smith agreed "to be bound by the terms of [the]

MAIN CONTRACT with the Owner, including every part of and all the general and specific

conditions, drawings, specifications, and addenda in anyway applicable to [the]

SUBCONTRACT."[1]

Paragraph 6 of the subcontract agreement states that:

> SUBCONTRACTOR agrees to start work as required by the CONTRACTOR,
> and to complete the several portions and the whole of the work herein sublet,
> at such times as will enable the CONTRACTOR to fully comply with the

---

[1]The first paragraph of the subcontract agreement defines the "main contract" as the
Contract Documents and Project Manual and Drawings for the City.

contract with the owner and to fully comply to the Contractor's schedule.
Subcontractor agrees to be bound by any provisions in the MAIN
CONTRACT with the owner for liquidated damages, if caused by
SUBCONTRACTOR, and/or to be obligated for payment of extended
overhead costs incurred by the CONTRACTOR as a result of the
Subcontractor's failure to comply with CONTRACTOR'S schedule.

Paragraph 16 of the subcontract agreement provides that:

Should SUBCONTRACTOR refuse or neglect to supply a sufficiency of
skilled workmen or materials or equipment or fail in any respect to prosecute
the SUBCONTRACTOR'S work with promptness and diligence, or cause by
any act or omission the stoppage or delay or interference with or damage to
the work, CONTRACTOR shall have the right to proceed with its work, or
such part of the work as to which such faults have occurred, or terminate the
agreement as a whole.  The SUBCONTRACTOR shall be given a 48 hour
notice of correction and reasonable time to cure prior to CONTRACTOR
taking corrective action or terminating the SUBCONTRACT.
SUBCONTRACTOR will be liable for any costs associated with their failure
to perform.

Paragraph 26 of the subcontract agreement provides that:

The contract is performable in compliance to the CONTRACTOR'S
SCHEDULE.  Extension of time will be subject to the approval by
CONTRACTOR and owner.  Delay costs plus any direct costs incurred
for extended overhead will be assessed under the terms of the MAIN
CONTRACT as a 'backcharge.'  Time extension requests and approvals must
be in writing.

In the present action, plaintiff Stellar J alleges that it was damaged by defendant

Smith's late delivery and/or installation of the equipment that it was required to provide

pursuant to the subcontract agreement.  In his expert report dated March 1, 2010, Jeffery

Busch, Stellar J's "delay and damage" expert, opined that defendant Smith's failure to timely

perform delayed completion of the Project by 94 work days and 134 calendar days.  Busch

opined that, because of delays caused by Smith, Stellar J incurred $436,215.21 in damages.

In his expert report, he itemizes these damages as follows:

FINDINGS AND RECOMMENDATION - 5

    a.  $114,942.41 - Direct Added Jobsite Costs March-June 2008 (Based on base per diem overhead rate of $1578.47 for 71 days)

    b.  $113,354.85 - Direct Added Jobsite Costs November 2008 - February 2009 (Based on base per diem overhead rate of $1760.25 for 63 days)

    c.  $172,283.95 - Extended Home Office Overhead (Based on per diem rate of $1285.70 for 134 days)

    d.  $35,734.00 - Direct Added Work Cost identified as a back charge to Smith.

Because Stellar J withheld $233,087.12 from defendant Smith's contract payments, Busch concludes Smith now owes net damages in the amount of $203,128.09.

Plaintiff Stellar J acknowledges that it never suspended work on the Project because of any delays allegedly caused by defendant Smith, and acknowledges that it "re-sequenced its work" to minimize the impact of these alleged delays.  Smith has cited documents supporting the conclusion that Stellar J "recorded a 24% gross profit of $2,126,418 on the Rainer job, exceeding its original budgeted or anticipated Project profit margin of 10.1%."  Stellar asserts that this calculation is irrelevant and inaccurate.

### Summary Judgment Standards

Federal Rule of Civil Procedure 56 (c) authorizes summary judgment if no genuine issue exists regarding any material fact and the moving party is entitled to judgment as a matter of law.  The moving party must show the absence of an issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  The moving party may discharge this burden by showing that there is an absence of evidence to support the nonmoving party's case.  Id. When the moving party shows the absence of an issue of material fact, the nonmoving party must go beyond the pleadings and show that there is a genuine issue for trial.  Id. at 324.

FINDINGS AND RECOMMENDATION - 6

The substantive law governing a claim or defense determines whether a fact is material.  T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).  Reasonable doubts concerning the existence of a factual issue should be resolved against the moving party.  Id. at 630-31.  The evidence of the nonmoving party is to be believed, and all justifiable inferences are to be drawn in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1985).  No genuine issue for trial exists, however, where the record as a whole could not lead the trier of fact to find for the nonmoving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## Discussion

Defendant Smith contends that it is entitled to summary judgment because the parties' subcontract agreement, incorporating the Main Contract between Stellar J and the City, precludes recovery of damages based upon delay.  Smith also contends that plaintiff Stellar J's claim of $172,283.95 for home office overhead is in fact a claim for "unabsorbed home office overhead" that is barred because Stellar J cannot show that it was "on standby" because of delay allegedly caused by Smith and "unable to take on other work."  Smith further contends that Stellar J's claims for "field and home office" are too speculative to support an award of damages, and that recovery on these claims would result in an impermissible "windfall."

A. Contention that Stellar J's claims are barred by contractual provisions

Defendant Smith contends that Stellar J is contractually barred from recovering most of the costs allegedly caused by any delay for which Smith might otherwise be responsible[2] because Section 5.17 of the Main Contract, incorporated into the subcontract agreement, precludes recovery of damages caused by delay if the Project was ultimately completed within the Contract Time. Smith also contends that, with the possible exception of the relatively minor amount of out-of-pocket expenses Stellar J asserts it incurred correcting Smith's allegedly defective work, Stellar J is entitled to no damages because it has been fully compensated for any alleged delays pursuant to change orders extending the deadline for completing the project.

This argument has some superficial appeal. As noted above, Section 5.17 of the "Main Contract" between Stellar J and the City prohibits Stellar J from recovering "extended overhead or other charges" for delays that extended the completion date beyond the date "planned by the Contractor but not beyond the Contract Time . . . ." Paragraph 2 of the parties' subcontract Agreement incorporated the terms of the "Main Contract" into the agreement between Stellar J and Smith, and there is no question that Stellar J ultimately completed its work within the allowable Contract Period, as extended by the Change Orders noted above.

Nevertheless, I am not convinced that these or any other provisions of the Main Contract and the subcontract Agreement preclude Stellar J's recovery of damages shown to

---

[2]Smith contends that contractual provisions preclude Stellar J's recovery of all but the $35,734.00 identified as a "backcharge," and that Stellar J cannot recover $19,143.09 of that amount because it reflects expenses incurred for Stellar J personnel who were already on the site.

FINDINGS AND RECOMMENDATION - 8

result from delay caused by defendant Smith.  Though the Main Agreement is incorporated into the parties' subcontract agreement, the limitations on damages recoverable for delay set out in Section 5.17 of the Main Agreement were included for the benefit of the City, not subcontractors like Smith.  In a portion of Section 5.17 not cited by Smith, on behalf of itself and its subcontractors, Stellar J expressly waived claims for damages for delays caused by the City and its employees, engineers, and agents.  Section 5.17 expressly provides that extension of the Contract Time is the "exclusive remedy" available to Stellar J and its subcontractors for delays caused by the City or these individuals.

When a subcontract incorporates the terms of a contract between a general contractor and an owner, the subcontractor cannot rely on terms that are included in the "main contract" for the sole benefit of the owner.  See Maerz v. J-C Company, Inc., 223 Or. 536, 538-39, 355 P.2d 64 (1960) (subcontractor could not invoke for its own benefit term from incorporated main contract that was included only for benefit of owner).  There is no question that the limitation on recovery for damages caused by delay set out in Section 5.17 is included only for the benefit of the City.  Section 5.17 says nothing about Stellar J's right to recover damages from a subcontractor who has not complied with the requirements of timeliness set out in a subcontract.  Instead, other provisions of the subcontract Agreement specifically address this issue, and allow Stellar J to recover for damages incurred because of delay caused by the subcontractor.

As noted above, paragraph 6 of the subcontract agreement required Smith to comply with Stellar J's schedule, and obligated it to pay any "extended overhead costs" that Stellar J incurred as a result of its failure to do so.  Paragraph 16 required Smith to provide sufficient

workmen and materials to carry out its work "with promptness and diligence," and provided

remedies, including Smith's liability for costs, if these obligations were not met.

 Paragraph 26 allowed Stellar J to recover costs it incurred as extended overhead because of

delay by Smith as a "backcharge."

Defendant Smith has not established that provisions of the "Main Contract" which

were incorporated into the parties' subcontract Agreement preclude Stellar J's recovery of

damages resulting from delay.  Smith cannot rely upon terms of the "Main Contract" that

were included for the benefit of the City, and nothing in the provision upon which Smith

relies addresses Stellar J's right to recover damages caused by a subcontractor's delay.  That

this right is expressly set out in other provisions in the subcontract agreement supports the

conclusion that incorporation of the Main Contract into the subcontract was not intended to

preclude such recovery.

Defendant Smith's assertion that it is entitled to summary judgment as to most of

Stellar J's claim because it has already recovered any added expenses through change orders

extending the completion deadline also fails.  Stellar J has submitted evidence supporting the

conclusion that the change orders did not reflect delays caused by S&L, and correctly notes

that change orders do not in any event include a line item for extended overhead.  Stellar J

cites evidence in the record supporting the conclusion that it has not been compensated for

damages allegedly resulting from delay caused by defendant Smith.  Stellar J also correctly

notes that, under the "Main Contract," it is entitled to a 15% mark-up on change orders

whether or not they extend the contract time.  The record does not conclusively establish that

Stellar J has been fully compensated for all damages allegedly arising from delay caused by

defendant Smith.  Material issues of fact exist as to whether Smith breached its contractual obligation to timely perform, and as to whether, but for any delays caused by Smith, Stellar could have completed the project sooner and realized greater profits.

B. Contention that Stellar J's $172,283.95 claim for "extended home office overhead" is an unrecoverable claim for "unabsorbed home office overhead"

In his expert report prepared for Stellar J, Jeffrey Busch opined that delays caused by defendant Smith caused Stellar J to incur damages for "Extended Home Office Overhead" in the amount of $172,283.95.  In its memoranda submitted in support of its motion for summary judgment, defendant Smith characterizes Stellar J's claim for this amount as a claim for "Unabsorbed Home Office Overhead."  Smith asserts that this claim is "nothing more than a 'disguised Eichleay formulation' for its extended home office overhead calculation."  Smith contends that this claim "should be summarily dismissed as a matter of law where work on the Project was never suspended, Stellar J was never placed on standby, and there is no evidence Stellar J was unable to take on additional work due to the delay."

These assertions require a brief examination of the difference between claims for "extended overhead" and "unabsorbed overhead."  "Extended overhead" has been described as "a concept unique to construction contracting," and defined as "the additional costs incurred when a job's performance period is prolonged."  Southwestern Engineering Co. v. Cajun Elec. Power Co-op, Inc., 915 F.2d 972, 978 (5th Cir. 1990) (quoting Capital Elec. Co. v. United States, 729 F.2d 743, 745 n. 3 (Fed. Cir. 1984)).  "Unabsorbed overhead," on the other hand, is  "more closely related to manufacturing cost accounting and occurs when the overhead for a fixed segment of the manufacturing time must be spread out among fewer

jobs, because one of the jobs assigned to that time period has been suspended or delayed." Id. (citing Capital Elec., 729 F.2d at 745 n. 3).

In order to recover damages for "extended overhead," a contractor must "show added overhead costs which exceed its normally incurred fixed expenses attributable to ongoing business operations . . . ." Id. (citing Guy James Constr. Co. v. Trinity Industries, Inc., 644 F.2d 525, 533 (5th Cir. 1981)).[3]

> In an extended overhead situation, where a job spills over into a time frame not allocated for that job, a contractor may still be able to complete the work without incurring "added" overhead costs because of, for instance, a plant's undercapacity. In such circumstances, it would be appropriate to require a showing that the contractor has incurred added overhead costs resulting from the prolongation.

Id. (citing Daly Constr., Inc., VABCA No. 2792, 87-3 BCA (CCH) par. 20, 182 at 102,150-51, 1987 WL 41331 (1987) (denying award of damages for extended overhead based on contractor's failure to present evidence of increased costs)).

> Unabsorbed overhead cases . . . present a different situation. In such cases, damage awards are made because overhead resources have been furnished for a particular job that is subsequently suspended. Under these circumstances we would not expect to see "added" overhead costs, and, indeed, we may even see a drop in overhead costs if, for example, employees are laid off. A damage award in these cases . . . is made not because of "added" overhead costs, but because a portion of existing overhead costs, which would have been absorbed by the suspended job, must now be spread out among the remaining jobs. Therefore, the *Guy James* requirement of "added" costs cannot be applicable to unabsorbed overhead situations . . . ."

Id.

In Eichleay Corp., ASBCA No. 5183, 60-2 B.C.A. ¶ 2688, 13,574 (1960), the Armed Services Board of Contract Appeals adopted a formula for determining the portion of home

_____

[3] Though the Guy James court did not explicitly identify the plaintiff's claim for overhead expenses as such, the action involved a claim for "extended" overhead rather than "unabsorbed" overhead. Southwestern Engineering, 915 F.2d at 978.

FINDINGS AND RECOMMENDATION - 12

office overhead that a contractor may recover as an unabsorbed expense when a project is suspended. Under that formula, the proportion of the billings on the contract in question to the total billings for the period of performance is determined, and a daily rate of home office expenses attributable to the contract is multiplied by the number of days of delay to determine the amount of a contractor's recovery for unresolved overhead. Id.

Defendant Smith asserts that, in his calculation of Stellar J's claim for "Extended Home Office Overhead," Busch used a "disguised Eichleay formula," prorating Stellar J's home office overhead expenses between Stellar J's billings for the Rainier project and the total billings on all of its projects during the contract period, and multiplying the resulting amount of daily home office overhead attributable to the Rainer project by the number of days of delay allegedly caused by Smith. Smith contends that, because Busch used the Eichleay formula applicable for calculating unabsorbed home office overhead, Stellar J's claim for purported "extended home office overhead" is simply a claim for "unabsorbed home office overhead." It further contends that Stellar J cannot recover these costs because it was not on "standby" during the period of delay for which recovery is sought, and because it has not shown that it was unable to take on additional work during that period.

If Stellar J were asserting a claim for "unabsorbed overhead," that claim would fail because it cannot show that it was ever required to be on "standby" while work on the project was suspended because defendant Smith failed to timely perform its obligations, and has not shown that it was unable to take on additional work during such a period. See West v. All State Boiler, Inc., 146 F.3d 1368, 1373 (Fed. Cir. 1998) (citing Interstate General Government Contractors v. West, 12 F.3d 1053, 1056 (Fed. Cir. 1993) (noting that, to establish claim for unabsorbed overhead, contractor must be on standby and unable to take

FINDINGS AND RECOMMENDATION - 13

on other work)).  However, in evaluating defendant Smith's motion for summary judgment,
I need not determine whether Stellar J's claim for $172,283.95 is simply a "disguised claim"
for "unabsorbed home office overhead."  Stellar J has asserted this as a claim for "extended
home office overhead," and I will evaluate it as such.

As noted above, in order to prevail on a claim for extended overhead, a contractor
must show that it has incurred <u>added</u> overhead costs that <u>exceed</u> the fixed expenses normally
incurred as part of "ongoing business operations."  <u>Southwestern Engineering</u>, 915 F.2d at
978.  Here, plaintiff's expert has opined that delay caused by Smith required it to incur
additional overhead.  However, he has not specified any overhead costs that Stellar J incurred
during the period of alleged delay that were not simply part of the general overhead required
by "ongoing business operations."  Instead, his calculation of "extended home office
overhead" appears to simply allocate a portion of Stellar J's ordinary home office overhead to
the Rainer Project for the additional time required by Smith's alleged failure to timely
perform its contractual obligations.

As the <u>Southwestern Engineering</u> court noted, in an "extended overhead situation," a
contractor may be able to complete its work on a delayed project without incurring added
overhead costs.  <u>Southwestern Engineering</u>, 915 F.2d at 978.  Here,  Stellar J seeks to simply
apportion some of its ongoing home office overhead costs to Smith during the period of
alleged delay without making any showing that its home office overhead costs were not fixed,
and would not have continued at the same rate, regardless of any delay.  Under these
circumstances, Smith is entitled to summary judgment on Stellar J's claim for "extended
home office overhead."  <u>See</u> <u>Guy James</u>, 644 F.2d at 533 (contractor could not recover office

FINDINGS AND RECOMMENDATION - 14

overhead where "home office costs were fixed, and would have been constantly incurred regardless of delay").

C.  <u>Contention that Stellar J's claims for direct added jobsite costs and office overhead should be dismissed as speculative, and that recovery on these claims would constitute impermissible windfall</u>

Smith contends that Stellar J's claims for "extended field[4] and office overhead" should be dismissed as speculative, and that allowing recovery of these costs "would result in a substantial windfall and duplicative recovery . . . which the law abhors."  Smith argues that, because certain change orders added to the "contract time," Stellar J "has been paid in full by the City–for both the original work and change order work which resulted in the 124 day extension."  It also contends that Stellar J cannot establish its additional field costs and office overhead damages with the requisite degree of certainty, and that the higher than expected profits Stellar J realized on the Project preclude any right to additional recovery.

As discussed above, Smith is entitled to summary judgment as to the claim for "extended home office overhead" in the amount of $172,283.95.  However, material issues of fact preclude summary judgment as to Stellar J's claim for "direct added jobsite costs." Stellar J has cited evidence supporting the conclusion that the change orders granted by the City were not related to the delays caused by Smith, and that Stellar J accordingly did not cover the additional jobsite expenses it incurred because of delays allegedly caused by Smith. Stellar notes that the change orders in any event do not include a line item for extended

---

[4]As noted above, Stellar J's expert characterized damages attributable to additional work at the Project site as "direct added jobsite costs."

FINDINGS AND RECOMMENDATION - 15

overhead, and cites evidence that, though it was granted additional time to complete the

Project under the change orders, it could have completed the Project sooner if Smith had

timely performed.  Stellar also correctly notes that the profits it ultimately realized on the

Project are not relevant in determining whether it would have earned more but for Smith's

alleged failure to timely perform.


### Conclusion

Defendant Smith's motion for summary judgment (#  44) should be GRANTED in

part and DENIED in part.  The motion should be GRANTED as to plaintiff Stellar J's claim

in the amount of $172,283.95 for extended home office overhead, and should be DENIED as

to the balance of Stellar J's claims.


### Scheduling Order

This Findings and Recommendation will be referred to a district judge.  Objections,

if any, are due August 23, 2010.  If no objections are filed, then the Findings and

Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with

a copy of the objections.  When the response is due or filed, whichever date is earlier, the

Findings and Recommendation will go under advisement.

DATED this 4th day of August, 2010.


/s/  John Jelderks
John Jelderks
U.S. Magistrate Judge